[This decision has been published in *Ohio Official Reports* at 97 Ohio St.3d 418.]

THE STATE EX REL. MILLER, APPELLANT, *v.* INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *State ex rel. Miller v. Indus. Comm*., 2002-Ohio-6664.]

*Workers' compensation—Claimants injured before November 16, 1973, can receive scheduled loss compensation under R.C. 4123.57(B) and permanent total disability compensation under R.C. 4123.58 on the same claim—State ex rel. Benton v. Columbus & S. Ohio Elec Co., overruled.*

(No. 2001-1793—Submitted September 17, 2002—Decided December 13, 2002.)

APPEAL from the Court of Appeals for Franklin County, No. 00AP-1384.

————————————

SYLLABUS OF THE COURT

Claimants injured before November 16, 1973, can receive scheduled loss compensation under R.C. 4123.57(B) (formerly R.C. 4123.57[C]) and permanent total disability compensation under R.C. 4123.58 in the same claim. (*State ex rel. Benton v. Columbus & S. Ohio Elec. Co*. [1968], 14 Ohio St.2d 130, 43 O.O.2d 238, 237 N.E.2d 134, overruled.)

————————————

**Per Curiam.**

{¶1} Jimmie Miller became a paraplegic after a 1967 industrial injury. In 1968, he was granted permanent total disability compensation ("PTD"), which continued until his death from related causes in 2000.

{¶2} After receiving death benefits, appellant widow-claimant, Ruth J. Miller, sought a scheduled loss award under R.C. 4123.57(B) for her decedent's total loss of use of his legs. That motion was brought pursuant to R.C. 4123.60, which permits payment of an award to dependents that "decedent would have been lawfully entitled to have applied for * * * at the time of his death."

**{¶3}** Appellee Industrial Commission of Ohio denied the award, reasoning that the decedent had no lawful entitlement to R.C. 4123.57(B) compensation at the time of his death, since dual payment of PTD and scheduled loss benefits was prohibited to claimants injured before November 16, 1973.

**{¶4}** The Court of Appeals for Franklin County denied claimant's petition for a writ of mandamus ordering the compensation, prompting her appeal to this court as of right.

**{¶5}** R.C. 4123.58(C) specifically permits payment of both PTD and scheduled loss compensation under R.C. 4123.57(B) (formerly 4123.57[C]) for the same injury. Before 1973, however, both statutes said nothing on the topic of concurrent payment. Am.Sub.H.B. No. 417, 135 Ohio Laws, Part I, 1699-1706.

**{¶6}** Pre-1973 claimants have been governed by *State ex rel. Benton v. Columbus & S. Ohio Elec. Co*. (1968), 14 Ohio St.2d 130, 43 O.O.2d 238, 237 N.E.2d 134, which held that the two benefits could not be paid in the same claim. Id. at paragraph two of the syllabus. Having been denied scheduled loss compensation as a result of her decedent's PTD awards, claimant insists that *Benton* has been significantly modified—if not completely overruled—by *State ex rel. Martin v. Indus. Comm.* (1978), 55 Ohio St.2d 18, 9 O.O.3d 10, 377 N.E.2d 1000, and *State ex rel. Doughty v. Indus. Comm*. (1991), 61 Ohio St.3d 736, 576 N.E.2d 801. That is the issue now before us.

**{¶7}** Two types of compensation in three guises are integral to our analysis. First, R.C. 4123.57(B) (formerly [C]) provides a compensation schedule for the loss of enumerated body members, designating the number of weeks of compensation according to which body part is lost. Originally interpreted as confined to loss by amputation—with the obvious exception of hearing and sight—scheduled loss benefits now cover loss of use as well. *State ex rel. Walker v. Indus. Comm.* (1979), 58 Ohio St.2d 402, 12 O.O.3d 347, 390 N.E.2d 1190, overruling *State ex rel. Bohan v. Indus. Comm*. (1946), 146 Ohio St. 618, 33 O.O. 92, 67 N.E.2d 536.

{¶8} The second type of compensation is PTD, contained in two forms in R.C. 4123.58. There is vocational PTD, where the allowed conditions either alone or with nonmedical disability factors render the claimant unable to do sustained remunerative work. *State ex rel. Stephenson v. Indus. Comm.* (1987), 31 Ohio St.3d 167, 31 OBR 369, 509 N.E.2d 946. There is also statutory PTD, in which a claimant is deemed permanently and totally disabled—irrespective of the claimant's actual ability to work—due to the loss of two enumerated body parts. R.C. 4123.58(C).

{¶9} These types of compensation variously influence *Benton, Martin,* and *Doughty. Benton*, which underlies the denial of compensation in the claim at issue, involved an employee who was statutorily deemed permanently and totally disabled after both hands were amputated. He was then denied scheduled loss benefits administratively and at the court of appeals. We affirmed on two bases, both of which we reexamine at this time.

{¶10} First, the court in *Benton* stated that claimants "cannot receive concurrent compensation for twice the amount of compensation permitted under Section 4123.57(C), Revised Code, in addition to the benefits provided by Section 4123.58, Revised Code." 14 Ohio St.2d at 133, 43 O.O.2d 238, 237 N.E.2d 134. Two difficulties emerge from this reasoning. First, if this statement meant that a claimant cannot receive compensation for both hands under R.C. 4123.57(C), that is clearly untrue. Second, regardless of whether R.C. 4123.57(C) permitted an award for one or two hands, there is no reason why receipt of PTD would be inconsistent with that scheduled loss award.

{¶11} *Benton* also held that the claimant was foreclosed from R.C. 4123.57(C) benefits because he had never been partially disabled, and therefore he "never came within the purview of" R.C. 4123.57. Id. at 133, 43 O.O.2d 238, 237 N.E.2d 134. Instead, he had been totally disabled from the moment of injury. This reasoning might work if R.C. 4123.57(C) and *statutory* PTD are viewed as having the same compensatory purpose. Both presume disability without requiring proof

of it, with the distinction lying only in the perceived extent of disability—PTD is for total disability, while R.C. 4123.57(C) is not. From this perspective, one could argue that receipt of both types of compensation constitutes double recovery for a single injury.

{¶12} We have, however, always viewed PTD and partial disability compensation—including R.C. 4123.57(C)—as having different goals. Total disability benefits, whether temporary or permanent, compensate for the loss of earnings or earning capacity. *State ex rel. Gen. Motors Corp. v. Indus. Comm.* (1975), 42 Ohio St.2d 278, 282, 71 O.O.2d 255, 328 N.E.2d 387; *State ex rel. Ashcraft v. Indus. Comm.* (1987), 34 Ohio St.3d 42, 44, 517 N.E.2d 533. In contrast, partial disability benefits have been compared to damages and are awarded irrespective of work capacity. *Gen. Motors Corp.,* 42 Ohio St.2d at 282, 71 O.O.2d 255, 328 N.E.2d 387. Using this rationale, the sequence of disability—i.e., whether R.C. 4123.57(C) benefits are requested before or after PTD—is irrelevant.

{¶13} While *Benton*'s logic may be unclear, the majority's regret at the conclusion it felt compelled to reach is not:

{¶14} "This obviously unjust result, whereby a claimant's award is measured by the fortuity of the events contributing to his disability, is compelled by the unperceptiveness of the controlling legislation." 14 Ohio St.2d at 133, 43 O.O.2d 238, 237 N.E.2d 134.

{¶15} Perhaps in this spirit, the court next addressed the problem in *Martin*, ten years later. A pre-1973 claimant like Benton, Martin received R.C. 4123.57(C) benefits for an above-the-knee amputation. He later received vocational PTD, from which his earlier R.C. 4123.57(C) compensation was deducted.

{¶16} Claimant objected to the deduction, and this time both types of compensation were allowed. *Martin*'s reasoning, unfortunately, however, was just as flawed as *Benton*'s. *Martin* emphasized that claimant's amputation was clearly compensable under the schedule of R.C. 4123.57(C), attempting to distinguish it

from *Benton* on that basis. That distinction, however, fails because, despite *Martin's* language to the contrary, Benton's loss was fully compensable under that statute as well. *Martin* also states that "[n]owhere in the body of the *Benton* opinion is it specifically held that an employee cannot receive concurrent compensation for an injury under R.C. 4123.57(C) and 4123.58 where he otherwise qualifies." 55 Ohio St.2d at 20, 9 O.O.3d 10, 377 N.E.2d 1000. That is misleading. While the *body* of the opinion indeed does not make that statement so explicitly, *Benton's* syllabus paragraph two *clearly* states that these benefits cannot both be paid for the same injury. *Benton*, 14 Ohio St.2d 130, 43 O.O.2d 238, 237 N.E.2d 134. In fact, *Martin*, four paragraphs later, acknowledged the syllabus:

{¶17} "This court is aware of the broad language found in paragraph two of the syllabus of *Benton* which, when read alone, supports the proposition that a claimant cannot receive compensation under both R.C. 4123.57(C) and 4123.58. However, that paragraph must be read in conjunction with the entire syllabus and supporting facts of the case. When read in this context, it is clear that the *Benton* holding does not prevent claimant in this cause from receiving his previously awarded benefits under R.C. 4123.57(C)." 55 Ohio St.2d at 21, 9 O.O.3d 10, 377 N.E.2d 1000.

{¶18} This reasoning is also vulnerable to attack. Reading *Benton* "in conjunction with the entire syllabus and [its] supporting facts" neither distinguishes *Benton* nor frees *Martin* from *Benton*'s holding. *Benton* is crystal clear in its pronouncement, which is why the case continues to haunt claimants to this day.

{¶19} This court's most recent struggle with *Benton* occurred in *Doughty,* 61 Ohio St.3d 736, 576 N.E.2d 801. There, another pre-1973 claimant lost the use of his right leg and was granted vocational PTD. Ten months later, a new claim was allowed for his left leg. The left leg continued to deteriorate, resulting in its eventual amputation.

**{¶20}** After that condition was allowed, claimant unsuccessfully sought R.C. 4123.57(C) compensation for the left leg. The court of appeals denied a writ of mandamus to order the compensation, and claimant appealed here. We ordered the commission to pay R.C. 4123.57(C) compensation. This time, we properly distinguished *Benton*, stressing that—unlike *Benton*—the condition for which Doughty received R.C. 4123.57(C) compensation was not the same condition for which he was paid PTD. To refuse R.C. 4123.57(C) compensation "would be to leave him uncompensated for his left leg amputation which arose and occurred after his PTD award. Such a result defeats the goal of workers' compensation to compensate claimants for their injuries." 61 Ohio St.3d at 739, 576 N.E.2d 801.

**{¶21}** The crux of the current controversy, however, stems from this statement in *Doughty*: "[T]o the extent that *Benton* can be read as inconsistent with the present case and the fairly well-settled law from which our opinion today derives, *Benton* is overruled." Id.

**{¶22}** The widow-claimant here contends that this declaration invalidates *Benton* and removes it as the sole impediment to receipt of both types of compensation. This argument is tenuous. *Doughty* overruled *Benton only* to the extent that it was inconsistent therewith. Given, however, that *Benton* was wholly distinguishable from *Doughty*, and therefore not controlling in *Doughty*, the two cases had no common ground on which there could be any inconsistency.

**{¶23}** Nevertheless, our analysis and further consideration of this issue, as explained above, persuade us that *Benton* is unsound. Accordingly, *Benton* is hereby overruled, and we grant a writ of mandamus ordering the commission to grant the widow-claimant's application for scheduled loss benefits.

**{¶24}** The judgment of the court of appeals is reversed, and the writ is granted.

Judgment reversed

and writ granted.

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

—————————

Thompson, Meier & Dersom and Adam H. Leonatti, for appellant.

Betty D. Montgomery, Attorney General, and Dennis L. Hufstader, Assistant Attorney General, for appellee Industrial Commission of Ohio.

—————————